**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE LOUIS VALENTINE, | Case No. 1:11-cv-01220-LJO-DLB PC |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT'S MOTION TO DISMISS BE GRANTED** |
| v. | |
| J. YERENA, | ECF No. 25 |
| Defendant. | OBJECTIONS, IF ANY, DUE WITHIN 14 DAYS |

**I.   Background**

Plaintiff Joe Louis Valentine ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding pro se and in forma pauperis in this civil action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's Complaint, filed July 25, 2011, against Defendant J. Yerena for retaliation in violation of the First Amendment. Pending before the Court is Defendant's Motion to Dismiss, filed October 9, 2012, pursuant to the unenumerated portion of Rule 12(b) of the Federal Rules of Civil Procedure, for Plaintiff's failure to exhaust administrative remedies, and in the alternative, for judgment on the pleadings pursuant to the doctrines of collateral estoppel and res judicata. Def.'s Mot. Dismiss, ECF No. 25. Plaintiff filed an opposition on November 1, 2012.[1] ECF No. 28. On December 10, 2012, Defendant filed his Reply. ECF No. 32. The matter is submitted pursuant to Local Rule 230(l).

---

[1] Defendant's motion to dismiss for failure to exhaust administrative remedies was served with a concurrent notice pursuant to *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), as required by the recent holding in *Woods v. Carey*, 684 F.3d 934, 936 (9th Cir. 2012).

## II.  Summary of Complaint

Plaintiff was incarcerated at Kern Valley State Prison ("KVSP"), where the events giving rise to this action occurred.  Plaintiff names as Defendant J. Yerena, an Institution Gang Investigator ("IGI").

Plaintiff alleges the following.  On June 27, 2007, Plaintiff was transferred from general population to administrative segregation by prison officials based on Defendant Yerena's allegation of Plaintiff's prison gang involvement.  Compl. at 5.  Seven independent source items were supposedly used to validate Plaintiff as a member of the Black Guerilla Family ("BGF").  Compl. at 5. The validation was submitted to the Office of Correctional Safety, which approved it.  Compl. at 5.  Defendant Yerena's recommendation of validation was motivated by retaliation against Plaintiff for fling a 602 inmate grievance/complaint on August 30, 2006 against correctional officer Garcia.  Compl. at 5-5A.  On September 22, 2006, Plaintiff was placed in administrative segregation ("ad seg") and separated from Garcia.  Compl. at 5A. Plaintiff was held in ad seg from September 22, 2006 to December 3, 2006 pending an investigation.

During Plaintiff's time in ad seg, Defendant Yerena informed Plaintiff that he had the ability to validate Plaintiff as a member of disruptive group, but had not done so.  Compl. at 5A. Defendant Yerena told Plaintiff that if he continued his complaint, Defendant Yerena would validate him.  Compl. at 5A.  Plaintiff made it clear that he would not drop the complaint.  Compl. at 5A.  After Plaintiff was released to general population on December 3, 2006, Defendant Yerena confiscated all of Plaintiff's political writings, pictures, and address lists.  Compl. at 5A.  Plaintiff contends that the items used to validate him should not have been relied upon as evidence of membership in a disruptive group, as they were indicative of his political beliefs, not disruptive group membership.  Compl. at 5B.  Defendant Yerena stated to Plaintiff that he did not agree with Plaintiff's political beliefs, which Plaintiff contends is a reference to Plaintiff's political texts, and writings by George Jackson, an alleged founder of BGF.  Compl. at 5C-5D.  Plaintiff contends that Defendant Yerena's actions were clearly motivated by Plaintiff filing a complaint and his political beliefs.  Compl. at 5D.

Plaintiff contends a violation of the First Amendment.  Plaintiff requests as relief compensatory and punitive damages, and costs of suit.

### III. Exhaustion of Administrative Remedies

#### A. Legal Standard

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002) (per curiam). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, *Porter v. Nussle*, 435 U.S. 516, 532 (2002).

Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion. *Jones*, 549 U.S. at 216; *Wyatt*, 315 F.3d at 1119. The failure to exhaust nonjudicial administrative remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion. *Wyatt*, 315 F.3d at 1119 (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir. 1998) (per curiam)). In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20. If the Court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. *Id.*

#### B. Analysis

The CDCR has an administrative grievance system for prisoner complaints. Cal. Code Regs. tit. 15, § 3084.1 (2010). At the time of the events in question, the process was initiated by submitting a CDC Form 602. *Id.* § 3084.2(a). Four levels of appeal were involved, including the informal level, first formal level, second formal level, and third formal level, also known as the "Director's Level." *Id.* § 3084.5. Appeals must be submitted within fifteen working days of the event being appealed, and the process is initiated by submission of the appeal to the informal level, or in some circumstances, the first formal level. *Id.* §§ 3084.5, 3084.6(c). In order to satisfy §

3

1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 85-86 (2006); *McKinney*, 311 F.3d at 1199-1201. Exhaustion does not always require pursuit of an appeal through the Director's Level of Review. What is required to satisfy exhaustion is a fact specific inquiry, and may be dependent upon prison officials' response to the appeal. *See Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010) (improper reasons for screening inmate's appeal is equitable exception to exhaustion); *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010) (listing examples of exceptions to exhaustion requirement from other circuits); *Brown v. Valoff*, 422 F.3d 926, 935-36 (9th Cir. 2005) ("[E]ntirely pointless exhaustion" not required).

Defendant contends that Plaintiff has failed to exhaust administrative remedies in this action. Mem. P. & A. 7:7-26. Defendant contends that Plaintiff filed only one inmate grievance at KVSP which was accepted for review, and it did not concern Defendant Yerena's alleged misconduct. Defendant submits as exhibits in support declarations from J. Lozano, Chief of the Office of Appeals for CDCR in Sacramento, California, S. Tallerico, Appeals Coordinator at KVSP, and C. Trenary, Correctional Case Records Manager at Pelican Bay State Prison ("PBSP"), where Plaintiff was incarcerated following his gang validation. Lozano's declaration indicates that Plaintiff did not file any inmate appeal for review at the third level while he was housed at KVSP. Lozano Decl. ¶ 6. Tallerico's declaration indicates that Plaintiff filed inmate appeals concerning his gang validation on April 18, 2008, August 13, 2008, May 29, 2008, and December 15, 2008, all of which were screened out as untimely filed. Tallerico Decl. ¶ 8. Trenary's declaration indicates that appeal No. KVSP-O-06-03065, concerning Plaintiff's issues with correctional officer Garcia, was submitted. Trenary Decl. ¶ 5. There is no record of an inmate grievance properly filed regarding Defendant Yerena's alleged retaliation while Plaintiff was incarcerated at KVSP. Defendant has met his initial burden of persuasion. The burden thus shifts to Plaintiff to demonstrate exhaustion of all available administrative remedies.

Plaintiff contends that he could not file his inmate appeal until after he received the 128 B-2

4

Report, which allegedly authorized the validation.[2] Pl.'s Opp'n 3:15-4:14. However, Plaintiff was not required to possess the form in order to file a grievance concerning Defendant Yerena. As required by the regulations at the time, Plaintiff had fifteen working days from the date of the alleged action by which to file his inmate grievance. *Sapp*, 623 F.3d at 818. Plaintiff was aware of Defendant Yerena's actions in 2006, when Defendant Yerena allegedly threatened to validate Plaintiff if he did not drop his grievance against officer Garcia. Plaintiff was placed in ad seg on June 27, 2007 for alleged prison gang involvement, and was validated on September 26, 2007, receiving an indeterminate SHU term.[3] Thus, at the latest, Plaintiff was aware of Defendant Yerena's alleged misconduct by September 6, 2007, when he was gang validated. Receipt of the 128 B2 form would not appear to be necessary, despite the response by the appeals coordinator, as that was not the actual action that Plaintiff wishes to appeal.

Plaintiff's remaining arguments are unpersuasive. Plaintiff contends that prison officials predetermined the outcome of Plaintiff's inmate grievance against officer Garza and engaged in a conspiracy to impede Plaintiff from exhausting administrative remedies against Defendant Yerena. Pl.'s Opp'n 2:21-3:13. Plaintiff cites to his rejected inmate appeals. The appeals coordinators properly rejected the inmate appeals as untimely, as they concerned conduct that had occurred, at the latest, by September 26, 2007, and were not filed until April 18, 2008 and afterwards, well after the 15-day time limit.

Plaintiff contends that the Court must permit Plaintiff to litigate the case, citing to *Brown v. Carlson*, 431 F. Supp. 755, 763 (W.D. Wis. 1977), and *Green v. Nelson*, 442 F. Supp. 1047, 1055 (D. Conn. 1977). Pl.'s Opp'n 4:16-24. These cases were decided prior to the Prison Litigation Reform Act, and are thus inapplicable. Exhaustion provisions of the PLRA are mandatory, not discretionary. *See Jones*, 549 U.S. at 211.

Plaintiff finally contends that this action must proceed because the appeals process cannot

---

[2] Plaintiff includes Exhibit B, his copy of the 128 B-2 Report, which is dated September 6, 2007. The report indicates that a copy was provided to Plaintiff on July 14, 2008.

[3] Plaintiff contends that an appeals coordinator at PBSP rejected his inmate appeal regarding Defendant Yerena as untimely because it was "an appeal issue at KVSP/OCS back in 2007 when you were served your 128 B-2." Pl.'s Opp'n, Ex. C. Plaintiff has provided documentation which indicates that he was served his 128 B-2 on July 14, 2008. However, Plaintiff's argument is not persuasive. Plaintiff was unaware of this purported requirement when he filed his first appeal on April 18, 2008, well before he received his 128 B-2 form. Thus, Plaintiff would not be able to rely upon such an argument as an excuse for the delay in filing the inmate appeal.

provide Plaintiff with the monetary damages that he seeks.  Pl.'s Opp'n 5:1-18.  Plaintiff's argument fails.  This argument was previously rejected by the United States Supreme Court. *Booth*, 532 U.S. at 741 (holding that exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process).

Defendant has demonstrated that Plaintiff has failed to exhaust available administrative remedies as required by the PLRA.  The undersigned recommends dismissal of this action without prejudice.[4] *Wyatt*, 315 F.3d at 1120.

**IV.   Conclusion and Recommendation**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendant's Motion to Dismiss, filed October 9, 2012, pursuant to the unenumerated portion of Rule 12(b) of the Federal Rules of Civil Procedure, should be granted;

2. This action be dismissed without prejudice for Plaintiff's failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a); and

3. The Clerk of the Court be directed to close this action.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  A party may respond to another party's objections by filing a response within **fourteen (14) days** after being served with a copy of that party's objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 3, 2013**                           /s/ *Dennis L. Beck*
                                                 UNITED STATES MAGISTRATE JUDGE

---

[4] Because Plaintiff has failed to exhaust available administrative remedies, the undersigned declines to further address Defendant's alternative arguments of collateral estoppel and res judicata.